# United States District Court
# District of Massachusetts

KELLY SMOAK,
        Petitioner,

    v.                      CRIMINAL NO. 07-10005-NMG-01

UNITED STATES OF AMERICA,
        Respondent.

## *REPORT AND RECOMMENDATION ON MOTIONS UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN CUSTODY (##259, 311), AND MOTIONS FOR SUMMARY DISMISSAL (##291, 312)*

COLLINGS, U.S.M.J.

### *I. Introduction*

Kelly Smoak ("Smoak" or "petitioner") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.

(#259)   The petitioner pled guilty to four counts of possession with intent to distribute cocaine-base in the District Court of Massachusetts and was sentenced to 180 months on each count of the indictment, to be served concurrently.  His sentence included supervised release for a term of six years.  The United States of America ("respondent" or "the government") has moved for a summary dismissal of the petitioner's motion. (#291)

## II. Factual Background

The following facts provide an overview, and the Court will develop further factual details as needed in its discussion of the petitioner's claims. On January 4, 2007, Smoak[1] was indicted by a grand jury on five[2] counts of distribution or aiding and abetting the distribution of cocaine base in Boston in violation of 21 U.S.C. § 841(a)(1). As the petitioner pled guilty to four charges, the Court will draw the facts from what the government would have shown if they had gone to trial.

Based on the evidence submitted in the Rule 11 Plea Hearing (#187), the

---

[1]

Also indicted on that day were three other co-defendants: Jean Janvier, Gerald Scott, and Fernando Phillips.  These co-defendants were also charged with selling crack cocaine in the same area as Smoak.  *See* PSR ¶¶ 11-12.

[2]

Although Smoak was indicted on five counts, the petitioner only pled guilty to four counts.  *See* Hearing Prior to Empanelment of Jury Trial and Plea, p. 12.

government could have proven the following facts if the case had gone to trial. The indictment was a result of a joint investigation and operation between the Boston Police Department and the Drug Enforcement Administration (DEA) into drug trafficking in the Gleason Street area of Dorchester.  This operation was composed of two undercover agents involved in purchasing crack cocaine; all of the purchases were recorded by video and audio surveillance.

During the summer of 2006 the Boston Police Department engaged in a joint task force investigation with the DEA into the distribution of crack-cocaine in the Greenwood area of Boston. (#187 at 16)   During those months, two undercover agents were equipped with video and audio recording equipment and sent into the area around 18 Gleason Street with the intent to make purchases of crack cocaine. (*Id.* at 16-17) Over the course of investigation, they had four encounters with the petitioner which are described below.[3]

 The first and second transaction both occurred on July 14, 2006. On that day, an undercover officer (UC) rode a bike toward 18 Gleason Street, where the petitioner and other individuals were situated on the porch. (*Id.* at 17)  The

---

[3]

   During the course of the investigation, there were a grand total of five encounters leading to the fifth charge against the petitioner. However, since the prosecution was only willing to go forward on four charges and the petitioner pleaded guilty to those four, the fifth will not be discussed.

UC asked if anyone was around, to which the petitioner responded "what do you want."(*Id.*)  The UC responded that he wanted a "rock." (*Id.*) Smoak then asked a co-defendant, Gerald Scott, who was standing nearby if he had anything, to which Scott responded in the affirmative. The UC and Scott went to the adjacent driveway and completed the transaction: three rocks of what appeared to be crack-cocaine for 50 dollars.(*Id.*)  The drugs field-tested positive for cocaine and were certified by a DEA laboratory for .49 grams of crack cocaine. (*Id.*)

The second transaction took place immediately thereafter.  During the course of his transaction with Scott, the UC indicated that he would be willing to buy more drugs. After completing his first transaction with Scott the UC began to leave the area, but he was hailed by whistles and noises to Gleason Street. (*Id.* at 20)  Scott inquired into how much money the UC had on him, which amounted to 150 dollars.(*Id.* at 18)  Smoak and another man asked the UC if he wanted an "eight ball" and the UC said he did. Smoak and the other man told the UC to stay on Gleason Street while the other man obtained the crack cocaine. Smoak stayed with the UC for twenty-five minutes until the individual returned. (*Id.*) The UC then went to the woods near 14 Gleason

Street with the individual and obtained 150 dollars worth of crack cocaine. Those drugs field tested positive for cocaine and were certified by a DEA laboratory test for 1.8 grams of cocaine base. (*Id.*)

The third transaction occurred on July 20, 2006. The UC was riding his bike through the Gleason Street area when he saw Smoak. *Id.* After the petitioner asked what the UC wanted, the UC responded with the "same thing." (*Id.* at 19)  Smoak asked "Same thing as last time?" to which the UC responded "Yes." (*Id.*)  Smoak and the UC then rode down Glenway Street, ending up back on Gleason Street at the place of the original deal. The UC stated he wanted 150 dollars worth of crack cocaine. (*Id.*) Smoak demanded the money, giving the UC his ring as collateral.  Smoak left on his bike with the money, returned, handed the UC a single large 'rock' of crack cocaine, and got his ring back. (*Id.*)  Those drugs field tested positive for cocaine and were certified by a DEA laboratory for 2.5 grams of cocaine base. (*Id.*)

The final transaction took place on July 27, 2006, when a second UC approached 14 Gleason Street where Smoak and a number of individuals were standing outside of the home. (*Id.*)  After Smoak asked the UC what he wanted, and the UC replied with "five 20s" meaning five 20 dollar bags of crack cocaine.

(*Id.* at 19-20)  Smoak took the officer up onto the porch of 14 Gleason Street where they made the exchange. The drugs field tested positive for cocaine and were certified by a DEA laboratory for .67 grams of cocaine base. (*Id.* at 20)

Following the January 4th indictment, the police arrested the co-defendants charged at the same time at Smoak.  However, at that time, Smoak became aware of the arrest warrant and fled.  On April 20, 2007, following a car stop in South Carolina, Smoak was arrested for possession of marijuana. During a finger print check, the South Carolina police discovered the outstanding arrest warrant.   Smoak was subsequently removed to Massachusetts.

### III. Procedural Background

On June 6, 2007, following the indictment and arrest of Smoak, the government filed an Information  pursuant to 21 U.S.C. § 851 establishing its intent to claim the petitioner as a career offender. (#35)  The Information stated that "[o]n or about February 28, 2002, Kelly Smoak was convicted in the Dorchester District Court, Dkt. No. 01-07-CR-7098C of Possession of a Class B Substance with Intent to Distribute in violation of M.G.L. c. 94C, §32A." (#35 at 1)  The result of the Information was to raise the petitioner's mandatory

maximum possible sentence from 20 years to 30 years. (#187 at 13)

Following the arrest of Smoak in South Carolina, the Court appointed Attorney Lopez on June 20, 2007 to represent Smoak. (#40)  Only 9 days later, after a colloquy with the defendant *ex parte*, the Court appointed a new attorney, Michael Andrews, Esq., to the case. (#48)   However, Attorney Andrews did not fair well either, and on August 22, 2007, Attorney Andrews filed a Motion to Withdraw as Attorney. (#64)  The undersigned denied this motion in an electronic order on August 22, 2007, stating:

> This is the second attempt by Mr. Smoak to change his court-appointed attorney. In the Court's view, Mr. Smoak's reasons for wanting the original CJA counsel, Mr. Lopez, replaced were without merit. However, because the litigation was at its earliest stages, the Court granted Mr. Smoak's request that Attorney Lopez be allowed to withdraw and new counsel be appointed. HOWEVER, MR. SMOAK WAS EXPLICITLY WARNED THAT HE DID NOT HAVE THE RIGHT TO CHOOSE HIS COURT-APPOINTED ATTORNEY AND THAT THE COURT WOULD NOT PERMIT HIM TO CHANGE APPOINTED ATTORNEYS AGAIN. Mr. Smoak acknowledged that this was the basis on which new counsel would be appointed. In these circumstances, the Court will not appoint a third CJA attorney for Mr. Smoak.

Electronic Order, August 22, 2007.

Smoak then appealed the denial of the Motion to Withdraw.   On

September 20, 2007, at a hearing before Judge Nathaniel Gorton, the petitioner stated that he could work with counsel.   Despite this assurance, however, on November 6, 2007 Smoak filed a Motion to Appoint new Counsel. (#82)  After a hearing on the Motion to Appoint New Counsel, Judge Gorton granted the motion on February 1, 2008.   Attorney Charles Rankin was appointed on February 14, 2008. Attorney Rankin only lasted four months before being forced by petitioner to file a motion to withdraw (#119) which was subsequently denied by the Court on August 7, 2008.  In the *ex parte* hearing, the Court again informed the petitioner that "you are not entitled to simply go through all the Criminal Justice Act attorneys that are qualified to represent defendants until you get one that you like." (#291, Ex. 6)

On the first day of trial prior to jury impanelment, the petitioner changed his plea from not guilty to guilty on four counts of drug distribution and aiding and abetting. (#187)  Following the plea hearing, Smoak was sentenced to 180 months incarceration and 6 years of supervised release pursuant to 18 U.S.C. § 3553(a). Smoak then filed an appeal of his sentence claiming that (1) there was a misapplication of the guidelines, (2) lack of sufficient evidence, (3) prosecutorial misconduct and (4) ineffective assistance of counsel. In summarily

dismissing his claim, the First Circuit stated that:

> With respect to defendant-appellants pro se arguments,
> his ineffective assistance of counsel claims are
> premature. *United States v. Osorio-Peña*, 247 F.2d 14,
> 19 (1st Cir. 2001) ("[t]he rule in this circuit is that a
> fact-specific claim of ineffective legal assistance cannot
> be raised initially on direct review of a criminal
> conviction but must originally be presented to the
> district court" through a habeas petition). And there is
> no record support for his speculative claims of
> prosecutorial misconduct.

*United States v. Smoak*, No. 09-1850 (1st Cir. Feb. 14, 2011).

Smoak then filed a petition for a writ of certiorari to the Supreme Court which
was denied on October 11, 2011. *Smoak v. United States*, - U.S. -, 132 S.Ct. 429
(2011).[4]

A year after the Supreme Court denied Smoak's petition for writ of
certiorari, Smoak filed a *pro se* Motion to Vacate Sentence under 28 U.S.C. §
2255. (#259)  The Motion to Vacate posits three main grounds for vacating the
sentence: ineffective assistance of counsel for actions done before the petitioner
pled guilty, ineffective assistance of counsel for actions done at the sentencing,
and prosecutorial misconduct.  Each of the three grounds lists several bases on

---

[4]

*See also* Letter from Office of Clerk of the United States Supreme Court, dated October 11, 2011.
(#251)

which to vacate the sentence.   There were a total of twelve bases in all.
Following the filing of the Motion to Vacate, the procedural background
becomes muddled, with Smoak filing multiple memoranda of law and
amendments to his original motion.   Each memorandum and amendment
changes the claims in the original Motion to Vacate.  For example, more than
five months after filing the original Motion to Vacate, on March 21, 2013, the
petitioner filed an unsigned Memorandum in Support of Motion to Vacate under
28 U.S.C. 2255. (#274)[5]  In this memorandum there are a total of nineteen
bases on which Smoak seeks to vacate the sentence.   Some of the bases were
contained within the original motion, while others are newly stated.   Adding
to the confusion, some of the bases in the original motion do not appear in the
memorandum at all.   On April 4, 2013 the petitioner sought to amend the
memorandum, the only change being that he signed it. (#274 and #275)

Subsequently, petitioner moved to Amend his Motion to Vacate on April
22, 2013. (#281, #281-1)  The Amended Motion to Vacate makes no changes
to the substantive allegations in the original motion.  (#311)[6] For instance, the

_____

[5]

The petitioner had filed a motion for an Extension of Time to file a memorandum of law on January 14, 2013. (#270)  Judge Gorton granted an extension of time until March 13, 2013.  (#272)

[6]

The government did not oppose the petitioner's Motion to Amend.  (#284)  As a result the amended motion was docketed as #311.

three grounds for dismissal, as well as the original twelve enumerated bases for dismissal, remain identical. The petitioner did make three minor changes to the original motion by changing his response to "yes" on the question of whether he raised the issue on appeal. *See* Amended Motion to Vacate, #311, p.5 part (b) Direct Appeal of Ground One, p. 7 part (b) Direct Appeal of Ground Two, and p. 8 part (b) Direct Appeal of Ground Three.   The petitioner also left questions 13 and 15 blank on page 11 in the amended motion. (#311)

The government filed a Motion for Summary Dismissal on May 10, 2013 (#291) as well as a Renewed Request for Summary Dismissal of Amended 2255 Petition. (#312)   The Renewed Request asks for the court to dismiss the Amended Petition for the reasons set forth in its original motion (#291) and provides additional reasons pertaining to one claim. (#312)  Shortly after the government provided its initial Request for Summary Dismissal, it received the Amended Petition filed by the petitioner. (#285) On September 3, 2013, petitioner filed a Motion to Amend/Formally Alter and Correct the Motion to Vacate, and a Motion for Leave to File Excess Pages which included 20 attachments containing documents and transcripts. (#304 and #305) The court denied the petitioner's Motion to Amend the Motion to Vacate and stated that

the court will consider materials contained in exhibit # 305 only to the extent that they bear on claims contained in the First Amended Petition. (#310)  The petitioner has also filed an Opposition to the government's Request for Summary Dismissal. (#318)

Given the circuitous nature of the petitioner's pleadings, the Court will individually address each ground put forth as well as each bases put forth by the petitioner in his pleadings.

## IV. Analysis

The bases on which Smoak seeks to vacate his sentence need to be gleaned from the multiple pleadings that he has submitted, as some arguments are contained in his motions (#259 and  #311) while others are contained in his supporting memorandum (#275).[7]  From the pleadings, there appear to be three main grounds under which the petitioner seeks relief: ineffective assistance of counsel for actions done before the petitioner pled guilty, ineffective assistance of counsel for actions done at the sentencing, and prosecutorial misconduct.

### A. Statute of Limitations

---

[7]

The court will use the petitioner's signed memorandum (#275) during its discussion of the petitioner's claims.

Before addressing the substance of the petitioner's claim, it is important to note that some of the bases on which the petitioner seeks relief are barred by the statute of limitations.   Section 2255 provides that a 1-year period of limitations shall apply, and shall run from the latest date on which the judgment of conviction becomes final.   *See* 28 U.S.C. §2255 (f)(1).   Congress intentionally made the time limit for habeas claims strict to "expedite collateral attacks by placing stringent time restrictions on [them]."   *United States v. Ciampi*, 419 F.3d 20, 23 (1st Cir. 2005) (internal citation and quotation marks omitted; alteration in original), *cert. denied*, 547 U.S. 1217 (2006).   Statutes of limitations in the habeas context are affirmative defenses.   *Turner v. United States*, 699 F.3d 578, 587 fn. 9 (1st Cir. 2012) (citing *Libby v. Magnusson*, 177 F.3d 43, 49 (1st Cir. 1999) ("In most settings, litigants invoke the statute of limitations as an affirmative defense . . . and this principle functions much the same way in habeas corpus jurisprudence.").   Although a court may raise a statute of limitations issue in a section 2255 case *sua sponte,* generally it "should give habeas petitioners advance notice and an opportunity to respond to a statute of limitations defense *before* dismissing a case *sue sponte*." *Celikoski v. United States*, 21 Fed. Appx. 19, 22, 2001 WL 1298835, at *2 (1st Cir. Oct. 25,

2001) (citing *Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001)) (emphasis original).

Smoak's petition for writ of certiorari to the Supreme Court was denied on October 11, 2011. (#251)   Therefore statute of limitations on Smoak's claims expired on October 11, 2012, one year after the date the Supreme Court denied certiorari. *See In re Smith*, 436 F.3d 9, 10 (1st Cir.), *cert. denied*, 549 U.S. 923 (2006) (decision final when petition for certiorari is denied).   As Smoak timely filed his original Motion to Vacate (#259), that motion and the claims therein are allowed to stand in their entirety. However, the claims which the petitioner raised for the first time in his Memorandum in Support of his Motion to Vacate (#275) will only be allowed if they "relate back" to the date of the timely filed original pleading.

Under Federal Rule of Civil Procedure 15(c)(2) "otherwise untimely pleading amendments 'relate back' to the date of the timely-filed original pleading provided the claim asserted in the amended plea (sic) 'arose out of the *conduct, transaction, or occurrence* set forth or attempted to be set forth in the original pleading.'" *Ciampi*, 419 F.3d at   23 (citing Fed. R. Civ. P. 15(c)(2)) (emphasis in original).   "An amended habeas petition . . . does not

relate back . . . when "it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). This relation back concept in the habeas context is strictly construed. "The standard cannot be satisfied 'merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective claim based upon an entirely distinct type of attorney misfeasance.'" *Turner*, 699 F.3d at 585 (quoting *Ciampi*, 419 F.3d at 24). Likewise, a motion cannot raise certain grounds and then a separately filed memorandum raise additional grounds. *See Id.* (Petitioner filed memorandum asserting additional claims 15 months after one year limitations period had run. Court deemed these additional claims were untimely.).

In the present case, the grounds listed in the Amended Motion (#311) are as follows:

> Ground One: Ineffective Assistance of Counsel. Before advising Movant to plead guilty, counsel failed to (1) properly investigate, (2) initiate a state post-conviction proceeding as promised, (3) failed to file a motion of severance in light of movant's lack of involvement with the other alleged co-conspirators, (4) inform movant that by pleading guilty, he would be exposed to an enhancement pursuant to 21 U.S.C. § 851 and Chapter

four of the U.S. sentencing guidelines, (5) advise movant not to go to trial because it would inflame the jury against his alleged co-defendant.  As a result, movant request (sic) to withdraw his plea.

Ground Two: Ineffective Assistance of Counsel.  At sentencing counsel failed to object to (1) the use of movant's prior convictions, and (2) erroneous characterization of movant as a gang member, when "in fact" he's not.  The District Court took that characterization into consideration while imposing sentence.

Ground Three: Prosecutorial Misconduct.  The government withheld (1) reports from the U.S. Justice Department, (2) Rocky Mountain Report, (3) Lowell task force reports, (4) Drug lab reports, and (5) Boston Police Reports.

#311 at 3-6.

These grounds are identical to the originally filed Motion to Vacate.  (#259)

The memorandum, however, was filed five months after the original motion and contains new grounds and arguments.  (#275)[8] The petitioner was clearly aware of the deadline for submitting his section 2255 motion.  *See* #262 Letter from Kelly Smoak to Clerk of Court, dated October 22, 2012 ("I am writing to let you know that my memorandum of law in support of my 28

---

[8]

Even the unsigned memorandum was filed five months after the statute of limitations had passed. (#274)

16

U.S.C. § 2255 IS COMING, at the time I [sic] filed, I was racing to meet my dead-line [sic] for submitting my 2255 motion to the court . . .")(emphasis original).[9] The government has also argued that the statute of limitations bars the claims alleged in the memorandum. (#291 at 19, 28, 40-41) Given that the petitioner's memorandum was filed five months after the statute of limitations passed, any claims put forth in the memorandum that do not relate back to the original motion are barred by the statute of limitations.

Even construing the petitioner's *pro se* filing liberally,[10] the following claims are raised for the first time in the memorandum and do not relate back to the motion to vacate. For the first time petitioner makes an ineffective assistance of counsel claim based on the failure to use an expert witness or to call the actual therapist who treated the petitioner. In the same paragraph the

---

[9]

On January 14, 2013 the petitioner asked for an extension of time to file the memorandum. (#270) This request was granted by the court, with a March 18, 2013 deadline set for the filing of the memorandum and an instruction that "No further extensions of time will be granted." (#272) Defendant's first Memorandum was docketed on March 21, 2013, and a second signed Memorandum was docketed on April 4, 2013.

[10]

*Pro se* pleadings are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations and quotation marks omitted).

petitioner also alleges that counsel failed to seek a path of defense based on mental capacity. "In regard to the mental capacity of the defendant 'Mr. Smoaks' the counsel failed to use expert witnesses and/or call the actual therapist that treated Mr. Smoak . . . counsel also failed to seek a path of defense using the lack of mental capacity of the defendant at the time of conviction." (#275 at 5)

Neither of these two claims even remotely relate to anything asserted in the motion; I shall recommend that they be dismissed as being brought beyond the statute of limitations. *Mayle*, 545 U.S. at 645. Nowhere in the Motion to Vacate does the petitioner mention his mental condition as being a basis for an ineffective assistance of counsel claim. While *pro se* pleadings must be read liberally, the Rules Governing Section 2255 Proceedings nonetheless require a motion to "(1) specify all the grounds for relief available to the moving party; [and] (2) state the facts supporting each ground . . .". Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2 (b)(1) and (2). *See also Mayle*, 545 U.S. at 649 (explaining that while Rule 8 of the Federal Rules of Civil procedure requires only a short and plain statement of the claim, that Rule 2(c) of the Rules Governing Habeas Corpus requires a more detailed

statement).  Nowhere in the Motion to Vacate is there a mention of mental capacity or therapy.  Nor does the petitioner offer a substantive argument for why these claims are not barred by the statute of limitations.  Given that the memorandum's newly inserted claim of ineffective assistance of counsel for failure to use expert witnesses and/or to call the actual therapist, as well as the newly inserted claim of ineffective assistance for failure to seek a path of defense using the lack mental capacity does not relate back to the Motion to Vacate, these two claims are barred by the statute of limitations.

### B. Standard of Review for Remaining Claims

As for the remaining claims by the petitioner, a prisoner may seek post conviction relief from a federal court conviction pursuant to 28 U.S.C. § 2255 if the sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack. Title 28 U.S.C. § 2255(a).  These allegations of error must "reveal fundamental defect[s] which, if uncorrected, will result in a complete miscarriage of justice" and cannot be a "surrogate for a direct appeal." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) (internal citations and quotation marks omitted).  Once a prisoner

requests relief under section 2255, a district court must grant an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . .". Title 28 U.S.C. §2255(b); *see also Owens v. United States*, 483 F.3d 48, 57 (1ˢᵗ Cir. 2007).  If a district court dismisses a section 2255 claim without holding an evidentiary hearing, the allegations set forth in the petition are taken as true unless "'those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F. 3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1ˢᵗ Cir. 2002)).

Under a 2255 motion to vacate, summary dismissal is warranted if the allegations made are "palpably incredible" or "patently frivolous or false." *Blackledge v. Allsion*, 431 U.S. 63, 76 (1977) (internal citation and quotation marks omitted); *see also Barret v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992) (summary dismissal is appropriate when petition is  inadequate on its face or is conclusively refuted by the files and records of the case); *Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir. 1990) (allegations cannot be accepted if "they are contradicted by the record, inherently incredible or conclusions rather than statements of facts"). As established below, Smoak's claims are such that

a hearing on his petition is not necessary.

### 1. Ground One:
### Ineffective Assistance of Counsel Prior to Plea Hearing

The Supreme Court has provided a two-pronged test for analyzing ineffective assistance of counsel claims. A petitioner must first demonstrate that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, a petitioner must show that he was prejudiced by his counsel's deficient performance. *Id.* at 687. Strickland creates a strong presumption of reasonable professional assistance. *Gould v. United States*, 657 F. Supp. 2d 321, 323 (D. Mass. 2009) (citing *Strickland*, 466 U.S. at 689).

Under the first prong, the Court has interpreted "adequate legal assistance" to mean "the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." *Strickland*, 466 U.S. at 688. Moreover "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.   Under the second prong, the petitioner must show that "any deficiencies in counsel's performance must be prejudicial to the defense in order

to constitute ineffective assistance under the Constitution." *Id.* at 692.  A defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong. *Turner*, 699 F.3d at 584 ("'[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.'")(quoting *Strickland*, 466 U.S. at 697).

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court established that the *Strickland* analysis applies to ineffective assistance of counsel claims in the guilty plea context. The Court stated that:

> Although our decision in *Strickland v. Washington* dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the 'prejudice' requirement in *Strickland v. Washington* are also relevant in the context of guilty pleas.

*Id.* at 57.

In order to establish prejudice through the plea process, the *Hill* standard states that "the defendant must show that there is a reasonable probability that, but

for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (footnote omitted).  A petitioner must show that counsel's errors "affected the outcome of the plea process." *Id.*  A failure to satisfy the prejudice prong allows the court to dispose of the petitioner's motion without reaching the performance issue. *Strickland*, 466 U.S. at 697; *Knight v. United States*, 37 F.3d 769 (1st Cir.1994).

The petitioner argues that his trial counsel was ineffective for making unreasonable strategic decisions both in preparation for trial and in sentencing.

### a. Failure to do a Proper Investigation

In his Motion to Vacate, petitioner claims that trial counsel was ineffective because he failed conduct a proper investigation prior to trial.  The motion does not provide any detail as to the facts underlying the failure to investigate.  Assuming a generous reading of the memorandum, many of the claims alleged in the memorandum fit broadly within a claim of failure to investigate. (#275)[11]  To show that Smoak was prejudiced by counsel's failure to investigate defenses or to discover potentially favorable evidence, Smoak

---

11

While this memorandum came prior to his amended petition, petitioner did not file a second memorandum in support of his amended petition. As such, the Court will infer the factual arguments from this memorandum.

must demonstrate that any such defenses or evidence likely would have changed either counsel's recommendation that Smoak plead guilty, or the outcome of a trial. *Hill,* 474 U.S. at 59.   As discussed below, Smoak has failed to show, in both his motion to vacate and his memorandum, any potentially favorable evidence that Counsel failed to discover.

*i. Failure to investigate the audio and video tape evidence*

Construed broadly, petitioner's allegation that "counsel failed to obtain the original video and audio recordings" falls within his "failure to investigate" claim.  (#275 at 4)  This claim is refuted, however, by the hearing that took place on August 7, 2008 on Attorney Rankin's Motion to Withdraw.[12] During the course of the discussion between the court of the petitioner as to why he sought to have Attorney Rankin withdraw, the petitioner specifically raised Attorney Rankin's failure to challenge the authenticity of the video.   During the discussion the court specifically asked Attorney Rankin to address the issue.

> THE COURT: All right.  I'm going to ask – you can sit down for a minute.  I'm going to ask Mr. Rankin about that particular point.

---

[12]

The transcript from this hearing was attached by the petitioner to his filings before the First Circuit Court of Appeals.  *See* February 4, 2010 *pro se* filing and accompanying appendix of Kelly Smoak in United States Court of Appeals Case No. 09-1850.  The government has also attached the transcript to their Request for Summary Dismissal.  (#293) Petitioner also attached a truncated version of the transcript.  (#305, Ex. 6)

Mr. Rankin, apparently, he's asked for funds to have an expert appointed with respect to the videotape.

MR. RANKIN: Your Honor, there are a number of videos of some of the transactions that are alleged in the indictment.   And on the videos there are individuals depicted that in some instances appear to be Mr. Smoak.  Some of the videos are of better quality than others.

With respect to a potential expert to see if there has been tampering with the experts –

THE COURT: You mean the tape?

MR. RANKIN: I'm sorry, tampering with the tape.  I've considered that possibility here.  I have in the past used experts to examine tapes, although audiotapes, where there was some – something that gave me a suspicion that there had been perhaps some deletion of it.

I didn't see anything in my review of the tapes that caused me to think that there had been tampering with the tapes and that the stops and starts, from what I saw, looked like nothing more than perhaps just technical difficulties.

That opinion, I think, is buttressed by the fact that the undercover police officer who made the alleged purchases was also wearing a transmitting device so that there is an audio of the transactions as well.  So that between looking at the video and listening to the audio on the video and listening to the tape of the undercover officer's transmitting device, I didn't see any basis to seek funds to have either the audio or the videotape examined by a forensic expert to determine if there was tampering.

25

> With respect to the chain of custody, I don't believe
> there's any expert necessary for that.  And as I
> understand the law, a challenge to the chain of custody
> could be made at trial, and the effort of the
> government to introduce that tape or video into
> evidence would require the government to account for
> its location and security at different times.  And so I
> didn't feel that there was an expert required to make a
> challenge to that.

#293 at 35-36.

Although the petitioner claims that counsel failed to investigate the audio and

video tapes, as is evident from the transcript, counsel did consider these issues.

Petitioner's disagreement with counsel's decision to challenge the evidence is

not sufficient to support a motion to vacate.   Disagreement over strategic

decisions are not enough to warrant  relief under section 2255.  "It is only

where, given the facts known at the time, counsel's choice was so patently

unreasonable that no competent attorney would have made it, that the

ineffective assistance prong is satisfied." *Knight,* 447 F.3d at 15 (internal

citation and quotation marks omitted).   Further, petitioner has failed to

demonstrate that an investigation into the audio and video tapes would have

either changed counsel's recommendation that the petitioner plead guilty or the

outcome of a trial. *Hill*, 474 U.S. at 59 (prejudice present if discovery of

evidence would have changed counsel's recommendation).  For the foregoing reasons, I shall recommend that petitioner's claim that counsel's failure to investigate the audio and video tape evidence constituted ineffective assistance of counsel be denied.

### ii. Failure to investigate grand jury minutes of the Greenwood/Hendry Street investigation

Without alleging anything more, the petitioner states that counsel failed to investigate "the grand jury minutes of the Greenwood/Hendry St. Investigation." (#275 at 4)  The petitioner cites to "Grand Jury Minutes dated 12-14-2006." (#275 at 5)  However there is nothing in the grand jury transcripts attached to the petition that provide grounds for an ineffective assistance of counsel claim.  The petitioner has failed to provide any evidence that counsel's failure to investigate the grand jury minutes in any capacity "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 691-92, or that had counsel investigated the grand jury minutes the petitioner "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted).  Smoak has failed to show, in both his motion to vacate and his memorandum, any potentially favorable evidence that counsel had failed to discover. "It is not enough merely to mention a possible argument

in the most skeletal way, leaving  the court to do counsel's work, create the ossature for the arguments, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082 (1990); *see also United States v. Jimenez*, 498 F.3d 82, 88 (1st Cir. 2007)("[I]ssues adverted to in a perfunctory manner . . . are deemed waived.") (internal citation and quotation marks omitted).  For the foregoing reasons petitioner's allegation that counsel's failure to investigate the grand jury minutes constituted ineffective assistance of counsel is without merit.

### iii. Failure to Investigate the Silver Platter Doctrine

The petitioner also contends that counsel rendered ineffective assistance of counsel because he failed to investigate "whether this was a state case given to the government on a silver platter."  The petitioner contends that "the investigation was conducted by the A.T.F. with the D.E.A. assisting." (#275 at 4)  Petitioner does not aver any other facts or evidence to support this claim. Most generously, it is assumed that the petitioner is referring to the prohibition against state law enforcement from gathering evidence in knowing violation of state law, and then federal officials using that evidence in federal court.  *See generally United States v. Sutherland*, 929 F.2d 765, 770 (1st Cir.), *cert. denied*

*sub. nom. Fini v. U.S.*, 502 U.S. 822 (1991); *United States v. Dedrick*, 840 F.

Supp.2d 482, 493 (D. Mass. 2012) ("The silver platter doctrine in now almost

eliminated in the First Circuit.").  Not only is this theory undermined by the

facts given the DEA involvement in the case from the start, but during the

hearing on Attorney Rankin's Motion to Withdraw, there was also a discussion

as to whether there were federal agents involved with the case from the outset.

> MR. RANKIN: Mr. Smoak's (sic) also asked about whether the audio portion of the videotape and the audiotape that was made was lawfully recorded because the undercover officer was a Boston police officer.  And if there was a state investigation, then there might be a challenge to the legality of a one-party recording.
>
> Your Honor is aware of case law about the admissibility of audio recordings in federal court.  But, here, it appears from the reports I've received that from the very first contact with Mr. Smoak the DEA was involved.  And in my opinion, the DEA's involvement means that the Court would examine a challenge to the legality of the audio recording under federal law which, of course, permits one-party consent.  I didn't feel that there was a basis for a motion to suppress the audio portion of the tapes.

#293 at 36-37.

There is no factual basis to support the petitioner's contention that this case fits

within the silver platter doctrine. The record also demonstrates that counsel examined petitioner's contention that this was a silver platter case. As nothing alleged shows counsel's performance fell below an objective standard of reasonableness, or that the petitioner was prejudiced by counsel's actions, the allegation that counsel's failure to investigate the silver platter doctrine constituted ineffective assistance of counsel is lacking in merit.

### iv. Failure to Investigate the Lab Reports between Greenwood/Hendry Street and Rocky Mountain Reports

Petitioner claims that his attorney failed to investigate the lab reports "between Greenwood/Hendry St. which there was (sic) a viable motion to suppress the alleged drugs" and that his attorney failed to investigate the Rocky Mountain Reports. (#275 at 4-5) Although the petitioner attaches multiple exhibits pertaining to drug lab reports, none of the exhibits provide any basis for an ineffective assistance of counsel claim. From the pleadings it appears that the petitioner is trying to say that the inconsistencies in the weight of the drugs demonstrates exculpatory evidence. "Now please note the result of each page. They are not the same! I think the point here is if the search is the same on each page then how is the result not the same." (#275 at 5) Petitioner's

contention is refuted by Charles Cusumano, the Senior Forensic Chemist for the DEA: "This argument reflects a misunderstanding of the meaning of Gross Weight and the procedures we follow during the normal testing process. In the course of testing an individual drug exhibit, there is additional packaging and labels and put on or inside the drug exhibit . . . The increased weight on the Amended Reports simply reflect this." (#295-3, ¶ 4) Even without Cusumano's affidavit, there is no evidence presented within the petitioner's exhibits that demonstrates that the trial attorney's failure to investigate the drug lab reports fell below an objective standard of reasonableness, nor does petitioner explain how but for his failure to investigate the petitioner would not have pled guilty and would have gone to trial. With respect to his allegations of ineffective counsel for failure to investigate the drug lab reports, this allegation is deficient.

### v. Failure to Investigate Discovery Evidence that was used in the Grand Jury Hearing

The petitioner appears to make a broad claim that the evidence used at the grand jury hearing would have benefitted the petitioner, but that trial counsel failed to investigate such evidence. (#275 at 9) The petitioner points to the following as examples of grand jury evidence that would have been to his

benefit: 1) that the undercover agent used in Greenwood/Hendry Street adamantly explained that petitioner was not present at any of the transactions, 2) that the undercover agent made statements that he, petitioner, was a non-participant in the purchase of drugs, 3) that the rough investigative notes reveal that the petitioner was not the person of interest in the joint investigation, and 4) that the government's interviews with the Boston Police and the DEA concerning the petitioner's involvement was presented to the grand jury but was withheld from the defense. (#275 at 9-10)  Again the petitioner has attached a myriad of exhibits purporting to support this claim of failure to investigate. Petitioner does not, however, demonstrate how any of these exhibits would have deterred him from changing his plea.  As to the first two allegations, that the petitioner was not present at any of the transactions and that the undercover agent made statements that the petitioner did not participate in the purchase of drugs, these are clearly refuted in the record that the petitioner attached to his memorandum. (#274, Ex. 1)( The Grand Jury Transcript from December 14, 2006 p.19-28, Testimony of Timothy Desmond detailing video surveillance of Smoak's participation in drug buys.)  The very evidence that the petitioner cites as exculpatory, is, in fact, inculpatory.

The petitioner also appears to argue that counsel's failure to investigate

32

allowed for exculpatory evidence to be withheld by the government. "Movant submits that if the United States would not have withheld true essential elements of the case and if counsels (sic) performance would have been at a standard of reasonableness, then the movant would not have plead (sic) guilty . . .". (#275 at 9) In essence the petitioner seems to put forth an argument that *Brady*[13] material was withheld, and because of counsel's failure to investigate, he did not find this exculpatory evidence. Nothing that petitioner cites or includes as an exhibit supports the conclusion that there was exculpatory or impeachment evidence that was material and favorable to the defense. Neither the "Rough Notes" nor the interviews with the Boston Police and the DEA provide even a trace of exculpatory evidence. (#275, Ex. 4, Ex. 5, Ex. 14; #305, Ex. 8, Ex. 11). There is nothing to which the petitioner cites upon which the court could find "that the government's nondisclosure constituted misconduct that deprived the petitioner of the ability to enter a knowing and voluntary plea . . .". *Ferrara v. United States*, 456 F.3d 278, 286 (1ˢᵗ Cir. 2006). Further, "a plea is not rendered infirm 'merely because [the defendant]

---

13

"Under *Brady*, the government is required to turn over exculpatory or impeachment evidence in its possession to the defendant." *Turner,* 501 F.3d at 73 (citing *United States v. Rivera-Rangel*, 396 F.3d 476, 485 (1ˢᵗ Cir. 2005)).

discovers long after the plea has been accepted that his calculus misapprehended the quality of the [government's] case.'" *Ferrara,* 456 F.3d at 291 (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)). "[D]ue process does not normally require the prosecution either to turn over the whole of its file or to disclose every shred of information that might conceivably affect the defendant's decisionmaking." *Ferrara*, 456 F.3d at 291. In short, the allegation that the failure to investigate the evidence used at the grand jury hearing constitutes ineffective assistance of counsel is devoid of merit.

### b. Failure to Initiate Post Conviction Proceeding as Promised and Failure to Object to the Use of Prior Convictions

Smoak also alleges that his trial counsel was ineffective in failing to initiate state post conviction proceedings of his state convictions and failing to object to the use of his prior convictions. (#275 at 6) He appears to be claiming that if these prior convictions were challenged, he would not have been a career offender and his sentence would have been lower. However, there is no likelihood that that would have occurred. Smoak has four prior state convictions that would qualify him as a career offender under the § 4B1.1 of the Sentencing Guidelines Manual.  In order to be considered a career offender, the defendant

must have at least "two prior felony convictions of either a crime of violence or a controlled substance offence." §4B1.1(a).  The petitioner has four state convictions that were used to label petitioner as a career offender: Armed Robbery, Assault and Battery involving a crime of violence, Armed Robbery, and Possession of a Class B Substance with intent to distribute. *See* Presentence Report, #292-3.  Petitioner would need to overturn three of his four convictions to no longer be classified as a career offender, and given that the petitioner provided no evidence that any of these convictions would be overturned, he has not substantiated the required prejudice needed to prove ineffective counsel. The Court of Appeals for the First Circuit noted in Smoak's appeal that it saw "no error in the district court's application of the career offender guidelines" because the government identified four predicate offenses, two of which would have been sufficient to warrant application of the guideline, and that the defendant-appellant raised a substantial objection to only one. (#274-16) "Without a successful motion to vacate, [petitioner] is unable to demonstrate the required prejudice, and this Court need not inquire further." *Robinson v. United States*, 2009 WL 2913646, at *7 (D. Mass. Sept. 8, 2009).  Petitioner has failed to show, in his memorandum or through the record, that any of his state

convictions would have been successfully vacated. As such, the sentencing guidelines following his plea would not have changed, and therefore there is no prejudice. Thus, the allegations of ineffective counsel for failure challenge or object to the use his prior convictions fail.

c. Failure to File a Motion of Severance

The petitioner alleges that trial counsel was ineffective in failing to file a motion of severance "in light of movant's lack of involvement with the other alleged co-conspirators." (#259 and 311 at 4)  The petitioner does not address this claim in his memorandum, and provides no documentary support for the allegation.  Further, courts have noted "that individuals who are indicted together generally should be tried together." *Turner,* 501 F.3d at 73 (citing *United States v. Pena-Lora,* 225 F.3d 17, 33 (1st Cir. 2000)); *see also United States v. Flores–Rivera,* 56 F.3d 319, 325 (1st Cir.1995) ("Thus, when multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice. The hurdle is intentionally high . . .") (internal citation and quotation marks omitted).  To whit, there is simply no colorable claim that trial counsel's failure to ask for a severance amounted to ineffective assistance of

counsel.

### d. Failure to Advise Petitioner on the Sentencing Guidelines

The petitioner appears to allege that trial counsel was ineffective for failing to advise the petitioner that he would be exposed to the career offender enhancement pursuant to 21 U.S.C. § 851. He states that counsel was ineffective for failing to "inform movant that by pleading guilty he would be exposed to an enhancement pursuant to 21 U.S.C. § 851." (#259 at 4) His claim appears to allege that if he had been advised as such, he would not have pled guilty. However, this is also contradicted by the record. During the plea colloquy, the court asked the Assistant United States Attorney John Wortmann, to inform the petitioner of the maximum possible penalties involved in the charges against him.

> MR. WORTMANN: There are four other counts of crack cocaine distribution/aiding and abetting. As a result of an 851 filing as to each of those counts, Mr. Smoak faces a maximum term of imprisonment of 40 years, a fine of up to $2 million, a term of supervised release of at least six years to life and a $100 special assessment.
>
> THE COURT: Are there any mandatory minimums?
>
> MR. WORTMANN: There are none, your Honor.
>
> MR. RANKIN: Your Honor, if I may just query, I thought the maximum was 30 years.

37

MR. WORTMANN: You know what?  He's absolutely right.  I apologize, your Honor.  It is 30 years – well, let me –

THE COURT: As a result of the 851?

MR. RANKIN: Yes.

MR. WORTMANN: As a result of the 851, it is 30 years.  I apologize.

MR. RANKIN: The reason is that there is no mandatory minimum associated with any of the counts.  Therefore, normally, the maximum would be 20 years.  Because the government filed an 851 notice, then that increases the maximum possible sentence from 20 to 30.

MR. WORTMANN: He is correct.  My apologies to the Court.

THE COURT: All right.  Mr. Smoak, do you understand the possible consequences of your plea here this morning?

MR. SMOAK: Yes, sir, your Honor.

THE COURT: Now, under the Sentencing Reform Act of 1984, the United States Sentencing Commission issued guidelines for judges to follow when imposing sentences in criminal cases.  Have you and Mr. Rankin as your lawyer discussed how those guidelines may apply to your specific case?

MR. SMOAK: Yes, yes.

#187, 12-13.

Not only did the petitioner affirm that his attorney had discussed the possible sentence with him prior to his entering a plea, but also the specific effect of the 851 enhancement was discussed in front of the petitioner. The petitioner was present during this discussion and attested that he understood the consequences of his plea. For the foregoing reasons the petitioner's ineffective assistance of counsel claim as to failure to advise on the sentencing guidelines is frivolous.

e. Wrongfully Advising Petitioner not to go to Trial

Petitioner also claims that trial counsel wrongfully advised petitioner not to go to trial because it would be damaging to his co-defendant's case. He appears to be alleging that based on this advice, which he claims was stated in an out-of-court meeting with defense counsel, petitioner was coerced into pleading out so as to not endanger his co-defendant's trial. In his affidavit, petitioner declares that during a 15 minute recess during the Rule 11 hearing, the co-defendant's attorney suggested that the petitioner should plead guilty as it would be damaging to the co-defendant's case. (#274, Ex.17) Petitioner declares that afterward, trial counsel stated that he "was thinking the same thing." (#274, Ex. 17)

"[T]he representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open

court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 73-4; *United States v. Santiago Miranda*, 654 F.3d 130, 138 (1st Cir. 2011). In the petitioner's Rule 11 hearing, the Court presented multiple questions testing the voluntariness of the petitioner to change his plea. These questions included whether the petitioner was satisfied with his attorney, whether there were any assurances or promises made to evoke a guilty plea, or whether the plea was forced. The petitioner's answers had satified the court enough to accept his plea as knowing and voluntary. [14] Moreover, given the strength of the evidence, trial counsel had advised the petitioner, well before the day of the Rule 11 hearing, to plead guilty given the substantial likelihood of conviction.[15] His concurrence with co-defendant's counsel if taken as what the petitioner believes is advice, it was in no way different to what counsel advised consistently in the months before the Rule 11 hearing. Even taking the petitioner's affidavit as true, the Court cannot find counsel ineffective, as the petitioner declared in open court his satisfaction with counsel's advice regarding plea agreements. For the

---

[14]

In fact, the Court questioned Smoak's voluntariness in accepting his guilty plea, after Smoak expressed dissatisfaction with his attorney, representation, and advice.

[15]

At the disposition, Attorney Rankin stated to the court "my advice to him earlier on was that the chances of conviction were substantial given the videotapes and that he would benefit himself at sentencing by pleading guilty well in advance of trial." (#188 at 17-18)

foregoing reasons, petitioner's claim of ineffective assistance of counsel for advising not to go to trial, lacks merit.

## 2. Ground Two:
## Ineffective Assistance of Counsel at Sentencing

a. Failure to object to the Use of Petitioner's Prior Convictions

Petitioner alleges that counsel's failure to object to the Court's use of prior convictions in sentencing is ineffective counsel. The arguments related to the petitioner's contention that trial counsel should have objected to the use of prior convictions in sentencing has already been discussed in sections **ii** and **iv**, *supra*. For the reasons discussed above these claims are meritless.

b. Failure to object to the Characterization of Gang Member

Petitioner alleges that counsel was ineffective at sentencing when he failed to object to the "erroneous characterizing of Petitioner as a gang member when "in fact he's not." (#311 at 6)  Petitioner argues that the District Court took this "erroneous" characterization into consideration when imposing sentence. However, this is completely refuted by the record. Nowhere in the Pre-Sentence Report or in the disposition, was the petitioner characterized as a "gang member." As there is no evidence to prove that the petitioner was described as a gang member or that the characterization colored the court's

41

perspective, the Court cannot find counsel ineffective for not objecting. There can be no objection absent any wrongdoing.   For the foregoing reasons, the petitioner's claim that the failure to object to characterization of the petitioner as a gang member constitutes ineffective assistance of counsel is frivolous.

### 3. Ground Three:
### Prosecutorial Misconduct

The petitioner's motion states that "[t]he government withheld (1) reports from the U.S. Justice Department, (2) Rocky Mountain Reports, (3) Lowell Task Force Reports, (4) Drug Lab Reports, and (5) Boston Police Report." (#311 at 7)   Some of these allegations have already been discussed *supra* and, as previously stated, there is no identifiable *Brady* violation in either the motion, the memorandum, or the exhibits.   Further, the First Circuit Court of Appeals heard petitioner's prosecutorial misconduct claim, and dismissed it in its entirety.

In his memorandum the petitioner states that the "government knowingly used falsified forensic drug laboratory results." (#275 at 11)   The petitioner's supposed evidence of this falsification is found in the fact that "the notary is not a valid notary." *Id.*   The petitioner also states that the affidavit by Charles Cusumano, the Senior Forensic Chemist employed by the DEA (#295-3), was

"a clear case of perjury." (#275 at 11)  There is simply no reasoned argument within the petitioner's memorandum or exhibits whereby he satisfies the requirements of section 2255.  The petitioner seems to be saying that the forensic drug lab results were falsified in part because the notary who signed the reports was an invalid notary, and that the government did not make an affidavit available for disclosure.  (#275 at 11)  There is no evidence in the record to support petitioner's contention that the drug lab reports were falsified. Further, there is no evidence that the government withheld exculpatory information.  "To establish a *Brady* violation, a habeas petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment)." *Conley v. United States*, 415 F.3d 183, 187 (1st Cir. 2005) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). There is nothing in the petitioner's bald assertions to support a claim for prosecutorial misconduct. *Owens*, 483 F.3d at 57 (movant's allegations need not be accepted when they are inherently incredible). For the foregoing reasons the petitioner's claim for prosecutorial misconduct is lacking in merit.

### V. Conclusion

For all the above reasons, I RECOMMEND that (1) the petitioner's motions under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (## 259, 311) be DENIED, (2) the Court find as moot the Government's motions for summary dismissal (## 291, 312) and (3) Final Judgment enter accordingly.

### VI. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.  *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379

(1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603(1st  Cir.

1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

February 12, 2014.